IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

_____

BROOKS HOME CARE SERVICES, INC.

    Plaintiff,

v.

XAVIER BECERRA, Secretary,
UNITED STATES DEPARTMENT OF
HEALTH AND HUMAN SERVICES,

    Defendant.

Civil Action. No. 7:22-CV-00088-O

## DEFENDANT XAVIER BECERRA'S MOTION TO DISMISS

LEIGHA SIMONTON
United States Attorney

John F. Summers
Assistant United States Attorney
Texas Bar No. 24079417
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214.659.8777
Fax:           214.659.8807
john.summers@usdoj.gov

*Attorneys for Defendant Xavier Becerra,
Secretary, U.S. Department of Health
and Human Services*

# TABLE OF CONTENTS

I.  Introduction ................................................................................................................. 1

II.  Background ................................................................................................................. 2

III.  Argument and Authorities ......................................................................................... 3

    A.  The Court Should Dismiss Brooks' Complaint Under Rule 12(b)(1)
    Because the Court Lacks Subject Matter Jurisdiction Over Brooks' Claims ........ 3

        1.  *The Legal Standard Governing Motions to Dismiss Under Rule
            12(b)(1).* ......................................................................................... 3

        2.  *The Court Cannot Exercise Jurisdiction Under 28 U.S.C. § 1331
            Because 42 U.S.C. § 405(h) Expressly Precludes Federal Question
            Jurisdiction.* ..................................................................................... 3

        3.  *The Court Cannot Exercise Jurisdiction Under 42 U.S.C. §§
            1395ii, 405(g), or 1395ff(b), Because Brooks Has Not Met
            Congress's Express Jurisdictional Requirements.* .................................... 5

        4.  *The Court Cannot Exercise Jurisdiction Over Brooks' Claim on
            Behalf of Its Patients (Count 2) Because Brooks Lacks Standing to
            Do So.* .............................................................................................. 7

        5.  *Brooks' Other Specific Jurisdictional Arguments Fail.* ............................ 8

    B.  The Court Should Dismiss the Complaint Because Brooks Fails to State a
    Claim ................................................................................................................. 13

        1.  *The Legal Standard Governing Rule 12(b)(6).* ......................................... 13

        2.  *Brooks Fails to State a Due Process Claim Because It Has No
            Constitutionally Protectable Property Interest.* ........................................ 14

        3.  *Brooks Fails to State an* Ultra Vires *Claim.* ............................................ 15

        4.  *Brooks Fails to State a Claim for Arbitrary and Capricious
            Conduct.* .......................................................................................... 15

        5.  *Brooks Fails to State a Claim for Due Process Violations on
            Behalf of Medicare Patients* ................................................................. 17

IV.  Conclusion ............................................................................................................... 17

## TABLE OF AUTHORITIES

### Case Law

*Abet Life, Inc. v. Azar*,
  2020 WL 3491966 (S.D. Tex. June 26, 2020)........................................................ 1, 12

*Acute Care Ambul. Serv., L.L.C. v. Azar II*,
  No. 7:20-CV-00217, 2020 WL 7640206 (S.D. Tex. Dec. 3, 2020) ........................ 8, 15

*Affiliated Professional  Home Health Care Agency v. Shalala*,
  164 F.3D 282 (5th Cir. 1999) .................................................................................... 11

*American Medical Hospice Care LLC v. Azar*,
  No. 5:20-cv-757, 2020 WL 9814144 (W.D. Tex. Dec. 9, 2020) ................... 1, 5, 12, 15

*Barrera-Montenego v. USA & DEA,*
  74 F.3d 657 (5th Cir. 1996) ........................................................................................ 3

*Bd. Of Regents of State Colleges v. Roth*,
  408 U.S. 564 (1972) .................................................................................................. 14

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007) .................................................................................................. 14

*Blue Valley Hosp., Inc. v. Azar*,
  919 F.3d 1278 (10th Cir. 2019) ................................................................................ 13

*Bridgett Memorial Healthcare, Inc. v. Azar*,
  4:20-cv-1770 (S.D. Tex. Oct. 15, 2020)..................................................................... 12

*Califano v. Sanders,*
  430 U.S. 99 (1977) .................................................................................................... 10

*Campbell v. City of San Antonio*,
  43 F.3d 973 (5th Cir. 1995)....................................................................................... 13

*Christopher v. Lawson*,
  358 F. Supp. 3d 600 (S.D. Tex. 2019) ..................................................................... 7, 8

*Env't Integrity Project v. U.S. EPA*,
  969 F.3d 529 (5th Cir. 2020) .................................................................................... 16

*Family Rehab., Inc. v. Azar*,
  886 F.3d 496 (5th Cir. 2018) ............................................................................... passim

*Heckler v. Ringer*,
  466 U.S. 602 (1984) ................................................................................................. 4, 5

*Lujan v. Defenders of Wildlife,*
    504 U.S. 555 (1992) ................................................................................ 8

*Maka Hospice v. Azar,*
    2020 WL 4284972 (C.D. Cal. July 24, 2020) ........................................... 13

*Mathews v. Eldridge,*
    424 U.S. 319 (1976) ........................................................................... 5, 8

*Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,*
    462 U.S. 29 (1983) ................................................................................ 16

*Pers. Care Prods. v. Hawkins,*
    635 F.3d 155 (5th Cir. 2011) ............................................................... 2, 14

*Physician Hosps. of Am. v. Sebelius,*
    691 F.3d 649 (5th Cir. 2012) ............................................................... 4, 5

*Plotkin v. IP Access,*
    407 F.3D 690 (5th Cir. 2005) ............................................................... 16

*Pylant v. Cuba,*
    2015 WL 1275669, 3:14-cv-0745-P (N.D. Tex. Mar. 6, 2015) .................... 14

*RenCare, Ltd. v. Humana Health Plan of Tex., Inc.,*
    395 F.3d 555 (5th Cir. 2004) ................................................................... 4

*Shalala v. Ill. Council on Long Term Care,*
    529 U.S. 1 (2000) ........................................................................ 8, 12, 13

*Spokeo, Inc. v. Robbins,*
    136 S.Ct. 1540 (2016) ............................................................................. 8

*Stockman v. Fed. Election Comm'n,*
    138 F.3d 144 (5th Cir. 1998) ................................................................... 3

*Texas v. U.S. EPA,*
    690 F.3d 670 (5th Cir. 2012) ................................................................. 17

*True Health Diagnostics, L.L.C. v. Azar,*
    392 F. Supp. 3d 656 (E.D. Tex. 2019)…. ..........................................*passim*

*Weinberger v. Salfi,*
    422 U.S. 749 (1975) ........................................................................... 4, 5

*Williams v. Parker,*
    843 F.3d 617 (5th Cir. 2016) ................................................................... 8

## Regulations

28 U.S.C. § 1331 ...................................................................................................... 4, 8

42 C.F.R. § 405.1132 ................................................................................................. 7

42 C.F.R. § 405.370 .................................................................................................. 7

42 C.F.R. § 405.370(a) .............................................................................................. 2

42 C.F.R. § 405.371 .................................................................................................. 5

42 C.F.R. § 405.371(a)(2) ................................................................................. 1, 2, 14

42 C.F.R. § 405.371(b)(1)-(2) ................................................................................ 2, 3

42 C.F.R. § 405.371(b)(1)(ii) .................................................................................. 16

42 C.F.R. § 405.371(b)(3) ......................................................................................... 3

42 C.F.R. § 405.372(b)(2) ......................................................................................... 2

42 C.F.R. § 405.372(e) ......................................................................................... 3, 14

42 C.F.R. § 405.372(c) ............................................................................................. 1

42 C.F.R. § 405.372(e) ......................................................................................... 3, 14

42 C.F.R. § 406.375(c) .............................................................................................. 2

42 U.S.C. § 1395ff .................................................................................................... 6

42 U.S.C. § 1395ff(a) ................................................................................................ 5

42 U.S.C. § 1395ff(a)(1) ........................................................................................ 6, 7

42 U.S.C. § 1395ff(a)(3)(B)(i) ............................................................................. 6, 7, 11

42 U.S.C. § 1395ff(b) ................................................................................................ 5

42 U.S.C. § 1395ff(b)(1)(A) ..................................................................... 4, 6

42 U.S.C. § 1395ff(d)(1)(A) ........................................................................ 11

42 U.S.C. § 1395ii ........................................................................................ 5

42 U.S.C. § 1395y(o) ............................................................................ 2, 5, 15

42 U.S.C. § 1395y(o)(1) ......................................................................... 1, 14

42 U.S.C. § 405 ............................................................................................. 4

42 U.S.C. § 405(g) .................................................................................. 4, 5, 7

42 U.S.C. § 405(h) .................................................................................. 4, 6, 7

## Regulations

*Medicare Program; Changes Concerning Suspension of Medicare Payments, and Determinations of Allowable Interest Expenses*, 61 Fed. Reg. 63740, 63742-43 (Dec. 2, 1996) (to be codified at 42 CFR Parts 401, 403, 405, 411, 413, 447, and 493) .............. 2

## I.   INTRODUCTION

The Secretary of the United Department of Health and Human Services temporarily suspended Plaintiff Brooks Home Care Services, Inc. ("Brooks") Medicare payments based on credible allegations of fraud, as he is permitted to do.  *See* 42 U.S.C. § 1395y(o)(1); 42 C.F.R. §§ 405.371(a)(2) and 405.372(c) (authorizing Secretary to impose payment suspensions while investigation on credible allegations of fraud is ongoing).  Brooks contests that determination and asks the Court to lift it.  Brooks' complaint is near-verbatim to those filed by the same law firm in a myriad of other lawsuits across Texas.[1]  As did the plaintiffs there, Brooks here seeks a mandatory injunction ordering the Secretary to lift the suspension "until the COVID-19 national emergency ends or until Defendant can provide a hearing and decision in conformance with constitutionally required procedures."  Compl. ¶ 98.  Brooks does not point to any statute, regulation, or rule that the Secretary violated when he suspended Brooks' Medicare payments.  Instead, Brooks wants this Court to step into the Secretary's shoes and decide whether the Secretary appropriately exercised his discretion in suspending Brooks' Medicare payments.  But the Court does not have jurisdiction to grant the relief Brooks requests.  Claims arising under the Medicare Act, like Brooks' here, generally require administrative exhaustion.  Brooks admits that it has not exhausted its administrative remedies.  And Brooks' attempts to excuse its failure to exhaust fail.

Even if the Court could exercise jurisdiction, the complaint also fails to plead a viable claim.  To prevail on its constitutional claims, Brooks must be deprived of a property right, and

---

[1] *See, e.g.*, *True Health Diagnostics, LLC v. Azar*, 392 F. Supp. 3d 656 (E.D. Tex. 2019); *Abet Life, Inc. v. Azar*, No. 2:420-cv-01169, 2020 WL 3491966 (S.D. Tex. June 26, 2020); *Am. Med. Hospice Care LLC, v. Azar*, No. 2020 WL 9814144 (No. 5:20-CV-757) (W.D. Tex. Dec. 9, 2020).

the Fifth Circuit has held that there is no property right in reimbursements while a fraud investigation is ongoing. *See Pers. Care Prods. v. Hawkins*, 635 F.3d 155, 159 (5th Cir. 2011). Brooks also fails to state claims for *ultra vires* and arbitrary and capricious agency conduct.

This Court should join the growing consensus of courts, reject these lawsuits, and dismiss Brooks' entire complaint.

## II.   BACKGROUND

"Medicare is a pay-first system.  That is, once a Medicare provider submits claims for payment—without any records, documents, or proof that the services were provided or that the services meet Medicare requirements—CMS, through its contractors, automatically pays those claims within a couple of weeks after submission." *True Health Diagnostics, L.L.C. v. Azar*, 392 F. Supp. 3d 656, 677 (E.D. Tex. 2019).  But the Secretary can suspend these payments when he determines that "a credible allegation of fraud exists."[2]   42 U.S.C. § 1395y(o); 42 C.F.R. § 405.371(a)(2).  This suspension authority is designed to ensure that "sufficient funds are available to recover [any] overpayments," which is "clearly necessary to protect the Trust Funds from loss." 61 Fed. Reg. 63740, 63742-43 (Dec. 2, 1996).

After a credible-fraud suspension finding, the provider is given an opportunity to rebut the finding and explain why the suspension should be lifted.  42 C.F.R. § 405.372(b)(2).  The Secretary's post-rebuttal decision is not appealable.  42 C.F.R. § 406.375(c).  But neither is a lengthy suspension inevitable.  Every 180 days the suspension is re-evaluated, and an appropriate entity must certify that the suspended provider remains under investigation.   42 C.F.R.

---

[2] "A credible allegation of fraud is an allegation from any source, including but not limited to the following: (1) Fraud hotline complaints, (2) Claims data mining, and (3) Patterns identified through provider audits, civil false claims cases, and law enforcement investigations."  42 C.F.R. § 405.370(a).  "Allegations are considered to be credible when they have indicia of reliability." *Id.*

§ 405.371(b)(1)-(2).  And after 18 months, good cause to lift the suspension is deemed to exist unless certain requirements are met.  42 C.F.R. § 405.371(b)(3).

Payments for services rendered after the suspension do not disappear.  Instead, they are held essentially in escrow—if the suspension is lifted with no overpayment finding, the suspended funds are paid to the provider.  42 C.F.R. § 405.372(e).  If the investigation discovers an overpayment, it recoups from the suspended payments and releases the rest.  *Id.*  Under the Medicare Act, any overpayment decision is a determination that can and must be appealed through Medicare's administrative process before seeking review in district court.[3]  42 C.F.R. § 405.372(e).

## III.    ARGUMENT AND AUTHORITIES

### A.    The Court Should Dismiss Brooks' Complaint Under Rule 12(b)(1) Because the Court Lacks Subject Matter Jurisdiction Over Brooks' Claims

#### 1.    *The Legal Standard Governing Motions to Dismiss Under Rule 12(b)(1).*

Federal courts require subject matter jurisdiction to rule on claims, and the party asserting jurisdiction has the burden to establish it.  *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998).  Unlike in the 12(b)(6) context, a Court may dismiss for lack of subject jurisdiction on the pleadings alone, on the pleadings supplemented by undisputed facts in the record, or on the complaint supplemented by undisputed facts in the record and resolution of disputed facts.  *Barrera-Montenego v. USA & DEA,* 74 F.3d 657, 660 (5th Cir. 1996).

#### 2.    *The Court Cannot Exercise Jurisdiction Under 28 U.S.C. § 1331 Because 42 U.S.C. § 405(h) Expressly Precludes Federal Question Jurisdiction.*

"The Medicare Act severely restricts the authority of federal courts by requiring virtually

---

[3] This administrative process consists of five steps; the process is accurately described, among other places, in *True Health Diagnostics, LLC*, 392 F. Supp. 3d at 678.

all legal attacks under the Act be brought through the agency." *Physician Hosps. of Am. v. Sebelius*, 691 F.3d 649, 653 (5th Cir. 2012) (internal quotation marks and citation omitted). Medicare claims are subject to the terms of 42 U.S.C. § 405; judicial review of such claims is available only after a "final decision" of the Secretary, which is obtained after exhausting the administrative appeal process. *See* 42 U.S.C. §§ 405(g), 1395ff(b)(1)(A); *Physician Hosps. of Am.*, 691 F.3d at 653. But 42 U.S.C. § 405 is also "'more than a codified requirement of administrative exhaustion.'" *Physician Hosps. of Am.*, 691 F.3d at 654 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 757 (1975)). The language of 42 U.S.C. § 405(h) "'is sweeping and direct and . . . states that no action shall be brought under § 1331, not merely that only those actions shall be brought in which administrative remedies have been exhausted.'" *Id.* (quoting *Salfi*, 422 U.S. at 757).

Here, no federal-question jurisdiction exists for Brooks' suit because section 405(h) expressly precludes such jurisdiction over all claims arising under the Medicare Act. *See* 42 U.S.C. § 405(h) (providing that "[n]o action . . . shall be brought under section 1331"). "A claim arises under the Medicare Act if 'both the standing and the substantive basis for the presentation' of the claim is the Medicare Act, or if the claim is 'inextricably intertwined' with a claim for Medicare benefits." *RenCare, Ltd. v. Humana Health Plan of Tex., Inc.*, 395 F.3d 555, 557 (5th Cir. 2004) (quoting *Heckler v. Ringer*, 466 U.S. 602, 606, 623 (1984)) (internal citations omitted). The term "arising under" is broadly construed to encompass all claims for relief, regardless of whether the claimant seeks benefits, declaratory relief, or injunctive relief. *Ringer*, 466 U.S. at 615.

In this case, Brooks seeks—through a variety of claims and causes of action—to overturn the Secretary's suspension of its Medicare payments. Brooks alleges that the Secretary violated

its property rights by imposing a payment suspension without a hearing and during the COVID-19 pandemic. *See, e.g.*, Compl. ¶¶ 49, 68. But Medicare statutes and regulations determine when Medicare suppliers are entitled to hearing and when the Secretary can suspend Medicare payments. *See* 42 U.S.C. §§ 1395ff(a),(b); 1395y(o); 42 C.F.R. § 405.371. Therefore, section 1331 jurisdiction is barred under section 405(h) as Plaintiff's claims challenging the payment suspension "arise under" the Medicare Act, as numerous courts have held. *Am. Med. Hospice Care LLC v. Azar*, No. 5:20-cv-757, 2020 WL 9814144, at *4 (W.D. Tex. Dec. 9, 2020) (concluding that substantively identical claims arose under the Medicare Act); *see also Ringer*, 466 U.S. at 615; *see also Mathews v. Eldridge*, 424 U.S. 319, 327 (1976) (recognizing that section 405(h) bars federal question jurisdiction even where the claimant is challenging the procedures used to terminate program payments); *Physician Hosps.*, 691 F.3d at 656 ("The Supreme Court has also explicitly rejected the argument that constitutional challenges are free from Section 405(h)'s requirements." (citing *Salfi*, 422 U.S. at 760–61)).

### 3.   The Court Cannot Exercise Jurisdiction Under 42 U.S.C. §§ 1395ii, 405(g), or 1395ff(b), Because Brooks Has Not Met Congress's Express Jurisdictional Requirements.

Brooks' reliance on 42 U.S.C. §§ 1395ii, 1395ff(b), or 405(g)for jurisdiction is also unavailing.

First, 42 U.S.C. § 1395ii does not establish subject matter jurisdiction over Brooks' claims. By its plain language,[4] section 1395ii does not authorize district courts to review

---

[4] Section 1395ii states "[t]he provisions of sections 406 and 416(j) of this title, and of subsections (a), (d), (e), (h), (i), (j), (k), and (l) of section 405 of this title, shall also apply with respect to this subchapter to the same extent as they are applicable with respect to subchapter II of this chapter, except that, in applying such provisions with respect to this subchapter, any reference therein to the Commissioner of Social Security or the Social Security Administration shall be considered a reference to the Secretary or the Department of Health and Human Services, respectively."

Medicare actions.  Congress used section 1395ii to apply subsections (a), (d), (e), (h), (i), (j), (k), and (l) of 42 U.S.C. § 405(h) to the Medicare Act.  Congress did not use section 1395ii to apply subsection (g)—the provision providing judicial review—to the Medicare Act.  As such, section 1395ii does not provide subject matter jurisdiction over Brooks' action.

Nor does 42 U.S.C. § 1395ff provide jurisdiction.  When a claim for Medicare reimbursement is denied, Congress allows a claimant challenging that initial determination[5] to seek "judicial review of the Secretary's final decision after such hearing as provided in section 405(g)."  42 U.S.C. § 1395ff(b)(1)(A).  But Congress allows for a section 405(g) review only when the claimant first receives a redetermination decision on its claim. *Id.* at § 1395ff(a)(3)(B)(i).  Section 1395ff(a)(3)(B)(i) states that "[n]o initial determination may be reconsidered or appealed under subsection (b) unless the fiscal intermediary or carrier [i.e., Medicare contractor] has made a redetermination of that initial determination under this paragraph."  Brooks has not pleaded, alleged, or argued that it requested redetermination and received a redetermination decision.  Therefore, there is no jurisdiction under section 405(g) because Brooks has not met Congress's explicit requirements for a section 405(g) review.

Furthermore, even if Brooks met the requirements of section 1395ff(a)(3)(B)(i), "[u]nder 42 U.S.C. § 405(g) and (h), federal courts are vested with jurisdiction over only a 'final decision'

---

[5] Initial determinations are determinations as to whether a claimant is entitled to benefits, the amount of benefits available, or any other determination with respect to a claim for benefits—including an initial determination that payment may not be made, or may no longer be made, for an item or service. 42 U.S.C. § 1395ff(a)(1).

of HHS when dealing with claims 'arising under' the [Medicare] Act."[6]  *Family Rehab., Inc. v. Azar*, 886 F.3d 496, 500 (5th Cir. 2018) (footnote omitted).  "Ordinarily, this means that a [supplier] may come to district court only after either (1) satisfying all four stages of administrative appeal . . . or (2) after the provider has escalated the claim to the Council and the Council acts or fails to act within 180 days."  *Id.* at 500-01 (citing 42 U.S.C. §§ 405(g), (h); 42 C.F.R. § 405.1132).  There is no dispute that Brooks has not obtained a final decision from the Medicare Appeals Council or otherwise used escalation to allow for jurisdiction under section 405(g).[7]  *See generally* Compl.  Instead, Brooks apparently concedes that its claims are not exhausted.  *See, e.g.*, Compl. ¶¶ 16-17 (alleging only jurisdictional exceptions).

### 4.  The Court Cannot Exercise Jurisdiction Over Brooks' Claim on Behalf of Its Patients (Count 2) Because Brooks Lacks Standing to Do So.

One of Brooks' claims alleges that the Secretary violated its *patients'* due process right of access to healthcare under Medicare.  Compl. ¶¶ 77-83.  But Brooks has no standing to do so.  "Standing to sue is rooted in the traditional understanding of a case or controversy[] . . . [and] limits the category of litigants empowered to maintain a lawsuit in federal court to seek redress for a legal wrong."  *Christopher v. Lawson*, 358 F. Supp. 3d 600, 606 (S.D. Tex. 2019) (quoting *Williams v. Parker*, 843 F.3d 617, 620 (5th Cir. 2016)); *Spokeo, Inc. v. Robbins*, 136 S.Ct. 1540, 1547 (2016).  To establish Article III standing

---

[6] The *Family Rehab* decision refers to the "Medicaid Act" in the quoted passage, but in context it is clear that was an error and that "Medicare Act" was the intended reference. *Family Rehab.*, 886 F.3d at 500.

[7] The Secretary's fraud payment suspension is not even an <u>initial</u> determination under § 1395ff(a)(1) and Brooks does not allege otherwise. Indeed, Medicare regulations define a payment suspension as "[t]he withholding of payment by a Medicare contractor from a provider or supplier of an approved Medicare payment amount *before a determination of the amount of the overpayment exists*, or until the resolution of an investigation of a credible allegation of fraud." 42 C.F.R. § 405.370 (emphasis added).

required to invoke federal jurisdiction, a plaintiff must establish that it (1) suffered an injury in fact, (2) that the injury is fairly traceable to the alleged conduct of the defendant, and (3) that the injury is likely to be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The plaintiff bears the burden of establishing all three elements of standing. *Spokeo*, 136 S.Ct. at 1547.

Brooks cannot meet the standing elements for its patient-related claim because *it* must show an injury in fact to itself. An alleged violation of its *patient's* due process rights cannot suffice. *Acute Care Ambul. Serv., L.L.C. v. Azar II*, No. 7:20-CV-00217, 2020 WL 7640206, at *5 (S.D. Tex. Dec. 3, 2020) (dismissing identical claim on standing grounds).

### 5.   *Brooks' Other Specific Jurisdictional Arguments Fail.*

Despite Brooks' apparent concessions that its claims arise under the Medicare Act and that it has failed to exhaust its administrative remedies, Brooks nevertheless alleges pre-exhaustion subject-matter jurisdiction under two theories. First, Brooks alleges that its failure to exhaust administrative remedies is excused because its claims are "entirely collateral" to its claim of benefits under the Act. Compl. ¶ 16.[8] Second, Brooks alleges subject-matter jurisdiction exists through an exception, described in *Illinois Council*, 529 U.S. 1, allowing for constitutional claims where an administrative channeling requirement would "amount to no review at all." *Id.* at 17; Compl. ¶ 17. Neither exception applies here.

---

[8] Brooks's complaint alleges that jurisdiction arises under the general federal question jurisdiction statute, 28 U.S.C. § 1331 because it is entirely collateral to the Medicare Act claim. This is incorrect; an "entirely collateral" claim still arises under § 405(g). The "exception" is instead a judicially created doctrine that the Secretary be deemed to waive administrative exhaustion requirements of the Act for "entirely collateral" claims. *See Shalala v. Ill. Council on Long Term Care*, 529 U.S. 1, 15 (2000) (describing "entirely collateral" exception announced in *Matthews v. Eldridge*, 424 U.S. 319 (1976)).

a.      The Entirely Collateral Claim Exception Does Not Apply.

First, the collateral-claim "exception" to the exhaustion requirement does not apply.  In certain circumstances, courts may exercise jurisdiction over non-exhausted claims arising under the Medicare Act where (a) the claims are "entirely collateral to a substantive agency decision" and (b) "full relief cannot be obtained a post-deprivation hearing."  *Family Rehab., Inc.*, 886 F.3d at 501.  In these scenarios, the Secretary is deemed to waive administrative exhaustion.  *Id.*

Brooks here raises four claims: (1) Brooks' procedural due process rights violated by HHS suspending Brooks' payments based on a credible allegation of fraud, Compl. ¶¶ 70-76; (2) Brooks' *patient*'s due process rights were violated by HHS suspending Brooks' payments based on a credible-fraud allegation, *id.* ¶¶ 77-83; (3) HHS's credible-fraud finding was arbitrary and capricious, *id.* ¶¶ 84-90; and (4) HHS acted *ultra vires* in suspending payments in a manner that allegedly violated Brooks' rights to due process, *id.* ¶¶ 91-95.  Brooks has failed to establish that any of the claims is entirely collateral to a substantive agency decision.

A claim cannot be considered entirely collateral if it requires the Court to "immerse itself in the substance of the underlying Medicare claim" or make a "factual determination as to the application of the Medicare Act."  *Family Rehab., Inc.*, 886 F.3d at 501 (internal quotations omitted).  Yet Brooks' claims here do both.  Throughout its complaint, and in connection with all four of it claims, Brooks contests facts of the Secretary's suspension decision—both the finding of a credible allegation of fraud and the failure to find good cause not to suspend based on access-to-healthcare factors—and Brooks seeks to force the Secretary to rescind that suspension (albeit only "temporarily").  *See, e.g.*, Compl. ¶¶ 10-11, 55, 58-65, 88.  Given the factual nature of the challenge, these claims are not entirely collateral.  *See Family Rehab.*, 886 F.3d at 501.

Brooks may contend, notwithstanding its factual attacks, that its request falls within the collateral-claim exception for each of its claims to the extent it seeks only an oral hearing before suspension.

But Brooks would still be wrong.  As an initial matter, no amount of liberal pleadings construction could even arguably create jurisdiction for the APA (Count 3) or patient-based due process (Count 2) claims.  "The APA does not afford an implied grant of subject-matter jurisdiction permitting federal judicial review of agency action." *Califano v. Sanders*, 430 U.S. 99, 107 (1977).  Instead, a party seeking APA review must identify a jurisdictional grant from either the enabling statute or one of the general provisions under Title 28 of the United States Code.  *Sanders*, 430 U.S. at 107.

Through its APA claim, Brooks does not merely seek a hearing; it instead unequivocally second-guesses the agency's findings.  Brooks alleges that "had Defendant acted properly, it would not have imposed the suspension," and that it is a "clear abuse of discretion for Defendant not to find that good cause [not to suspend] exists where the COVID-19 pandemic . . . will soon overwhelm America's healthcare system."  Compl. ¶¶ 55, 88.  Similarly, Brooks' patient-based due process claim contests "imposing the Medicare payment suspension during the COVID-19 pandemic." *Id.* ¶ 79.  These are plainly the types of "factual attacks" that cannot fall under the collateral-claim exception.  *See Family Rehab.*, 886 F.3d at 501; *see also id.* at 501 n.6 (noting that appellant conceded its APA claims could not fall under the collateral-claim exception).

The analysis on Brooks' remaining claims (Counts 1 and 4) is slightly different, but the result is the same.  Brooks' complaint relies chiefly on *Family Rehabilitation* (cited above).  There, the Fifth Circuit held jurisdiction existed under the collateral claim exception where a Medicare provider had engaged in some but not all of the administrative appeal process.  The

appellant alleged that procedural due process required that provider have its oral hearing

(contemplated by congressional statute, *see* 42 U.S.C. § 1395ff(d)(1)(A)) before CMS could

begin to recoup administratively determined overpayments. *Family Rehab.*, 886 F.3d at 500.

The provider sought an injunction against recoupment until the hearing could be held. *Id.* The

Fifth Circuit concluded that a plaintiff may bring a claim absent full exhaustion if the claim

"sound[s] only in constitutional or procedural law . . . and request[s] that benefits be maintained

temporarily until the agency follows statutorily or constitutionally required procedures." *Family*

*Rehab*, 886 F.3d at 503.  Based on that legal conclusion, the Fifth Circuit held that appellants'

claims for an oral hearing fell under the collateral-claim exception. *Id.*

     Brooks now seeks to extend *Family Rehabilitation* to a different scenario: the

Secretary's credible-allegation-of-fraud suspension.

     But the collateral-claim exception cannot extend to fit this scenario for at least three

reasons.  First, unlike *Family Rehab*, Brooks' request here is inextricably intertwined with an

attack on the Secretary's suspension decision because the substance and the remedy are so

closely related.  While *Family Rehab* involved merely a delay in the Secretary's efforts to

recoup, Brooks' request to lift the suspension is nearly identical to a request to overturn the

suspension decision itself. *See Affiliated Prof'l Home Health Care Agency v. Shalala*, 164 F.3d

282, 285 (5th Cir. 1999) (finding no jurisdiction despite portion of claim requesting to lift

suspension of Medicare payment because such relief was "unquestionably administrative in

nature").  Second, again unlike *Family Rehab*, Brooks asks the Court for substantive Medicare

benefits; it requests an order to "lift the suspension," which is functionally identical to ordering

the Secretary to resume paying Brooks for services rendered. *Compare Family Rehab*, 886 F.3d

at 504 (noting request merely to delay recoupment proceedings).  Finally, *Family Rehabilitation*

**Defendant Xavier Becerra's Motion to Dismiss – Page 11**

involved a scenario in which the claimant received a redetermination decision as required by 42 U.S.C. § 1395ff(a)(3)(B)(i), had engaged in some steps to exhaust administrative remedies, and sought an expressly available hearing. *See Illinois Council*, 529 U.S. at 15 (describing collateral-claim exception as excusing exhaustion only of "some (but not all)" administrative steps). Here, by contrast, Brooks sued before the Secretary has made an appealable determination at all. *See Am. Med. Hospice Care, LLC*, 2020 WL 9814144, at *5-6 (distinguishing *Family Rehab* on this basis). The congressional framework provides no right to a hearing in connection with a suspension decision.[9] *Id*. In other words, *Family Rehabilitation* deemed some of the administrative-exhaustion requirements unnecessary to seek a hearing that Congress allowed. Brooks here seeks to sidestep *all* administrative exhaustion requirements to seek a hearing that Congress did not allow.

Indeed, since *Family Rehabilitation*, district courts in this Circuit have frequently resolved whether claims nearly identical to Brooks' fall under this narrow exception to the administrative-exhaustion requirement. With one exception,[10] those courts all reach the same result: a challenge to the Secretary's suspension decision—whether it is raised as procedural due process, *ultra vires*, or arbitrary and capricious agency action—is not entirely collateral to Brooks' claim for benefits, and no jurisdiction exists. *Am. Med. Hospice Care*, 2020 WL

---

[9] Brooks's complaint is unclear regarding its constitutional theory; Brooks makes no allegation of a statutorily mandated hearing it was not provided. But Brooks also does not allege that any statute is unconstitutional for failure to provide an oral hearing consistent with due process.

[10] Before ultimately dismissing the complaint under Rule 12(b)(6), Judge Alvarez found procedural due process claims seeking a lift of a credible-fraud-allegation suspension to be collateral. *Acute Care*, 2020 WL 7640206, at *5. But here the plaintiff seeks to contest the Secretary's factual fraud allegation, a situation not addressed or described in the *Acute Care* decision. And although Judge Alvarez found the request for a temporary lift of the suspension pending a hearing analogous to the requested hearing in *Family Rehabilitation*, she did not wrestle with the distinctions described above. *Acute Care*, 2020 WL 7640206, at *5.

9814144, at *5-6; Dkt. 27, *Bridgett Memorial Healthcare, Inc. v. Azar*, 4:20-cv-1770 (S.D. Tex. Oct. 15, 2020); *Abet Life, Inc. v. Azar*, 2020 WL 3491966, at *2 (S.D. Tex. June 26, 2020); *True Health Diagnostics*, 392 F. Supp. 3d at 681-82.  *See also Blue Valley Hosp., Inc. v. Azar*, 919 F.3d 1278, 1286 (10th Cir. 2019); *Maka Hospice v. Azar*, 2020 WL 4284972, at *2 (C.D. Cal. July 24, 2020).  Brooks' claims are not entirely collateral to its administrative claims.

<u>b.</u>      <u>The "No Review at All" Exception Does Not Apply.</u>

Brooks also relies on a second exception to administrative exhaustion for claims arising under the Medicare Act: the "no review at all" exception described in *Illinois Council*, 529 U.S. 1.  This narrow exception applies only where there would be a *complete* preclusion of judicial review of any kind if federal question jurisdiction were not granted.  *Family Rehab., Inc.*, 886 F.3d at 505 (quoting *Ill. Council*, 529 U.S. at 23).  "[I]t is not enough to assert that judicial review will be delayed and that [Brooks] itself will be prejudiced by that delay"; indeed, review is considered available as long as "there potentially were other parties with an interest and a right to seek administrative review."  *See id.*  Here, while Brooks alleges it cannot survive waiting for an initial determination to then appeal, many providers have challenged suspensions, and many of those providers are not as reliant on Medicare payments that Brooks alleges to be.  *Family Rehab., Inc.*, 886 F.3d at 505 (rejecting "no review at all" exception in similar contexts based on similar rationales).

**B.**      **The Court Should Dismiss the Complaint Because Brooks Fails to State a Claim**

*1.*      ***The Legal Standard Governing Rule 12(b)(6).***

In deciding a Rule 12(b)(6) motion to dismiss, the Court evaluates the sufficiency of the complaint by accepting "all well-pleaded facts as true and viewing those facts in the light most favorable to [the plaintiff]."  *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995). The complaint's factual allegations "must be enough to raise a right to relief above the

speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  While the Court must typically limit its 12(b)(6) analysis to the pleadings themselves, the Court may consider any documents referred to in the complaint or any other documents that are "central to a claim." *Pylant v. Cuba*, 2015 WL 1275669, 3:14-cv-0745-P, at *2 (N.D. Tex. Mar. 6, 2015).

### 2. Brooks Fails to State a Due Process Claim Because It Has No Constitutionally Protectable Property Interest.

Even if jurisdiction existed, Brooks' due process claims still fail because there is no protectable property interest at stake.  To create a constitutionally protectable property interest, a "unilateral expectation of benefit" is not enough.  *Pers. Care Prods.*, 635 F.3d at 158.  Instead, the property interest, if any, must arise from "rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."  *Id.* (quoting *Bd. Of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972)).

The Medicare Act makes clear that there is no property right in receiving Medicare payments pending a fraud investigation.  To the contrary, the Act instead confirms that no such right exists; the regulations expressly permit suspension of payments and require that suspended payments be first applied to reduce or eliminate any overpayments.  42 U.S.C. § 1395y(o)(1); 42 C.F.R. §§ 405.371(a)(2), 405.372(e).  Because the statutory and regulatory framework expressly empowers the Secretary to suspend based on credible allegations of fraud, there is "no property interest in [a provider's] present reimbursement claims while past claims are under investigation for fraud."  *Personal Care Prods., Inc.*, 635 F.3d at 159 (writing in the Medicaid context).[11]  *See*

---

[11] It is irrelevant that *Personal Care* was decided based on Medicaid statutes and regulations rather than Medicare.  The decision ultimately hinged on the statutory scheme and the conclusion that the Medicaid statutory scheme did not create a property right in Medicaid payments pending fraud investigations.  *Pers. Care Prods.*, 635 F.3d at 159.  Similarly here, the relevant statutory

*also Acute Care Ambuls.*, 2020 WL 7640206, at *9 (while declining to resolve the question, reasoning that "[t]he writing on the wall seems clear: there is no property interest in Medicare payments."). Put another way, "[i]t is not a colorable constitutional violation of due process to withhold payments temporarily to a provider without a hearing." *Am. Med. Hospice Care*, 2020 WL 9814144, at *6. Because there is no property interest, there is no due process claim, so Brooks' constitutional claim fails.

> 3.    ***Brooks Fails to State an* Ultra Vires *Claim.***

Brooks also fails to state a claim for *ultra vires* conduct. Brooks alleges that the Secretary acted "*ultra vires* in failing to give notice and an opportunity for a hearing . . . yet imposing Medicare payment suspension during the COVID-19 Pandemic and national emergency." Compl. ¶ 92. There is no statute or regulation requiring such a hearing, and Congress specifically allows payment suspension when there is a credible allegation of fraud. 42. U.S.C. § 1395y(o). Because there is no statute or regulation requiring such a hearing, Brooks' claim must be constitutional; it is then essentially a mirror image to Brooks' procedural-due-process claim, and it fails for the same reasons. *See infra Section* II.B.2. Accordingly, Brooks cannot show that the Secretary's actions were *ultra vires* to the Medicare statutes. Thus, Brooks fails to state a claim. *See Acute Care Ambul. Servs.*, 2020 WL 7640206, at *14 (dismissing substantively identical claim on the merits).

> 4.    ***Brooks Fails to State a Claim for Arbitrary and Capricious Conduct.***

Brooks also contends that the Secretary engaged in arbitrary and capricious regulatory action (Count 3). But that claim fails, too. Brooks asserts that the Secretary's suspension of its

---

and regulatory Medicare scheme vests the Secretary with authority to suspend payments, as the Secretary has done.

Medicare payments was arbitrary and capricious because the Secretary failed to find good cause

not to suspend Brooks' Medicare payments due to the alleged inability for local Medicare

beneficiaries to find adequate care if Brooks could not provide it.  Compl. ¶¶ 84-90.  An agency

decision is arbitrary or capricious only if:

> the agency has relied on factors which Congress has not intended it to consider,
> entirely failed to consider an important aspect of the problem, offered an
> explanation for its decision that runs counter to the evidence before the agency, or
> is so implausible that it could not be ascribed to a difference in view or the
> product of agency expertise.

*Env't Integrity Project v. U.S. EPA*, 969 F.3d 529, 539, 540 (5th Cir. 2020) (quoting *Motor

Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 462 U.S. 29, 43 (1983)).

Here, CMS, through Qlarant,[12] declined Brooks' request to lift the suspension based on

alleged beneficiary access issues set forth in 42 C.F.R. § 405.371(b)(1)(ii).  Based on the fact

that "there are at least 299 other home health agencies providing services to Medicare

beneficiaries in the Dallas, Texas area," App004, Qlarant expressly found that "the payment

suspension does not pose a danger to beneficiary life or health."  *Id.*  Other than Brooks'

conclusory statement that Qlarant's finding is incorrect, Brooks provides no explanation as to

how the Secretary relied on factors which Congress has not intended it to consider, offered an

explanation that runs counter to the evidence before the agency, or made an conclusion that is so

implausible that it could not be ascribed to a difference in view or the product of agency

expertise.[13]  *See Plotkin v. IP Access*, 407 F.3d 690, 696 (5th Cir. 2005) (noting that conclusory

---

[12] Qlarant is the Unified Program Integrity Contractor for the Southwest region.  Qlarant is in
charge of certain program integrity issues within its region under the direction of CMS.

[13] While Brooks's complaint does allege its factual disagreements with the credible allegation of
fraud finding, its arbitrary-and-capricious claim relies only on the Secretary's failure to find good
cause not to suspend based on patient-access issues.  *See* Compl. ¶¶ 84-90.  In any event, while
Brooks sets forth its legal position concerning the credible-allegation-of-fraud finding, it still

allegations are not accepted as true).  Even if the Court has jurisdiction over it, the Court should dismiss Brooks' arbitrary and capricious claim as well.

> ### 5. *Brooks Fails to State a Claim for Due Process Violations on Behalf of Medicare Patients*

Finally, Brooks alleges that the Secretary is violating Brooks' "patients' right to access such home health services by imposing the suspension during the COVID-19 pandemic and national emergency."  Compl. ¶ 79.  Assuming Brooks has the standing to bring claims for its patients, Brooks does not explain how imposing the suspension based upon credible allegations of fraud at this time would prevent its patients from receiving services elsewhere.  *See True Health Diagnostics*, 392 F. Supp. 3d at 681 (noting that laboratory services pose less of a risk of patient harm).  Qlarant has already factually determined that the suspension poses no risk of patient-care access, App004 ("Based on the availability of laboratory services in the area served by Brooks, CMS has determined the payment suspension does not pose a danger to beneficiary life or health."), and that factual finding is entitled to deference.  *Texas v. U.S. EPA*, 690 F.3d 670, 677 (5th Cir. 2012) (noting that courts are most deferential to agency fact finding within the agency's expertise).  Brooks also fails to explain how the suspension imposed here violates a patients' right to equal protection.  Because Brooks has only provided conclusory statements to support its right to relief, and because the Secretary has already made contrary factual findings, Brooks cannot plead a plausible claim.  The Court should dismiss this claim as well.

### IV.   CONCLUSION

For the reasons stated above, the Court should dismiss entire Brooks' Complaint with prejudice and enter final judgment in the Secretary's favor.

---

fails to allege any facts making it plausible that the Secretary acted in an arbitrary or capricious manner.  Compl. ¶¶ 58-65; *see also* App002-008 (addressing Brooks' arguments).

Dated: January 13, 2023

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

*/s/ John F. Summers*
John F. Summers
Assistant United States Attorney
Texas Bar No. 24079417
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:      214.659.8777
Fax:              214.659.8807
john.summers@usdoj.gov

*Attorneys for Defendant Xavier Becerra,*
*Secretary, U.S. Department of Health and*
*Human Services*

## CERTIFICATE OF SERVICE

On January 13, 2023, I electronically filed the above motion to dismiss with the clerk of court for the U.S. District Court, Northern District of Texas.  I certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ John F. Summers*
John F. Summers
Assistant United States Attorney

**Defendant Xavier Becerra's Motion to Dismiss – Page 18**